IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARLOS EDUARDO SEGURA,

      Petitioner,

v.                                               **NO. CIV. 04-0899 JH/LAM**

ALLEN COOPER,

      Respondent.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

      1.      Petitioner Carlos Eduardo Segura (hereinafter, "Segura") is a federal prisoner appearing *pro se*.  He is currently incarcerated at the Cibola County Correctional Center (hereinafter, "CCCC") in Milan, New Mexico.[2]  On August 9, 2004, Petitioner filed his *pro se* ***Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241)*** (*Doc. 1*) (hereinafter, "*Petition*") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  On the same date, Petitioner filed his ***Memorandum to Support Petition*** (*Doc. 2*) (hereinafter, "*Memorandum in Support*") in support of his *Petition*.  Subsequently, with Court approval, Segura supplemented

---

[1]**Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

[2]*See Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241)* (*Doc. 1*) *at 1.*

his *Petition* with the materials contained in his ***Motion to Supplement Pursuant to 28 U.S.C. § 2242*** (*Doc. 7*) filed on September 2, 2004 (hereinafter, "*First Supplement*"), his ***Motion to Supplement Habeas Petition Pursuant to 28 U.S.C. § 2242*** (*Doc. 18*) filed on March 22, 2005 (hereinafter, "*Second Supplement*"), and his ***Motion to Supplement Pursuant to 28 U.S.C. § 2242*** (*Doc. 22*) filed on June 14, 2005 (hereinafter, "*Third Supplement*").[3]

2.      CCCC is a non-federal correctional facility operated by Corrections Corporation of America (hereinafter, "CCA") which houses federal inmates pursuant to a contract with the Federal Bureau of Prisons (hereinafter, "BOP").[4]  In his *Petition*, as supplemented, Segura names Allen Cooper, who is the current warden of CCCC, as the respondent in this action.[5]

3.      In his *Petition*, as supplemented, and his *Memorandum in Support*, Segura challenges the computation of his federal sentences by CCCC staff and the BOP.[6]  More specifically, Segura contends that: (a) his two, concurrent, eighteen-month federal sentences for violation of supervised

---

[3]These supplements were authorized by the Court's ***Order Granting Petitioner's Motion to Supplement Pursuant to 28 U.S.C. § 2242*** (*Doc. 16*) filed on December 15, 2004, ***Order Granting Petitioner's Motion to Supplement Habeas Petition Pursuant to 28 U.S.C. § 2242*** (*Doc. 21*) filed on April 7, 2005, and ***Order Granting Petitioner's Motion to Supplement Pursuant to 28 U.S.C. § 2242*** (*Doc. 23*) filed on July 13, 2005.

[4]*See* ***United States' Response to Petition for Writ of Habeas Corpus*** (*Doc. 11*) filed on October 27, 2004, at 3.

[5]*See Petition* at 1; ***United States' Response to Petition for Writ of Habeas Corpus*** (*Doc. 11*) filed on October 27, 2004, at 3.

[6]CCCC staff compute the sentences of federal inmates incarcerated at CCCC subject to routine audit by BOP staff for compliance with applicable federal law and BOP policy.  *See* ***United States' Response to Petition for Writ of Habeas Corpus*** (*Doc.11*) at 3 n. 3.

release imposed in Case Nos. CR-87-530-WMB and CR-87-583-WMB[7] should not be aggregated with his one-hundred and forty-four-month federal sentence imposed in Case No. 96-225-CR-Ferguson(03) because the good time credits[8] for these sentences should be computed differently;[9] and (b) the good time credits for his federal sentence in Case No. 96-225-CR-Ferguson(03) should be computed pursuant to 18 U.S.C. § 3624(b)(1) based on the length of the sentence imposed rather than the time actually served.[10]   Segura contends that as a consequence of these errors in the computation of his sentences, he will be incarcerated longer than is required by law.  As relief, Segura asks the Court to order Respondent to re-compute Segura's federal sentences and good time credits, and to also re-compute the good time credits of all other federal inmates incarcerated at CCCC.[11]

4.       On October 27, 2004, the United States filed its *United States' Response to Petition for Writ of Habeas Corpus* (*Doc. 11*) (hereinafter, "*Response*") in response to the *Petition*.  With Court approval, the United States supplemented its *Response* with the materials contained in its *United States' Supplemental Response to Petition for Writ of Habeas Corpus* (*Doc. 17*) filed on

---

[7]As is discussed more fully below, Segura is serving two, concurrent, eighteen-month supervised release terms imposed in Case Nos. CR-87-530 WMB and CR-87-583 WMB; however, various documents in the record refer to these two, concurrent terms as a single term.

[8]Prison credits for good conduct were usually referred to as "good time credits" under the federal sentencing laws in effect prior to the effective date of the Sentencing Reform Act of 1984 (hereinafter, "SRA"), which was November 1, 1987.  However, under the provisions of the SRA, these credits are usually referred to as "good conduct credits."  For ease of reference, the Court uses the phrase "good time credits" to refer to both types of credits in these *Proposed Findings and Recommended Disposition.*

[9]*See Petition* at 3; *Memorandum in Support* at 5-7.

[10]*See First Supplement* at 1-2; *Second Supplement* at 1-3.

[11]*See Memorandum in Support* at 7; *First Supplement* at 2; *Second Supplement at 3.*

December 17, 2004 (hereinafter, "*United States' First Supplemental Response*"), and its **United States' Second Supplemental Response to Petition for Writ of Habeas Corpus** (*Doc. 20*) filed on March 31, 2005 (hereinafter, "*United States' Second Supplemental Response*").[12]

5.       In its *Response*, as supplemented, the United States argues that Segura's *Petition* should be denied because: (a) his federal sentences in Case Nos. CR-87-530-WMB, CR-87-583-WMB and 96-225-CR-Ferguson(03) are properly aggregated for purposes of sentence computation because the good time credits for these sentences should be computed in the same way; and (b) the good time credits for these sentences are properly computed pursuant to 18 U.S.C. § 3624(b)(1) based on the time actually served rather than the length of the sentence imposed.[13]  The United States also contends that Segura does not have standing in this action to make a claim on behalf of the other federal inmates incarcerated at CCCC.[14]

6.       On November 8, 2004, Segura filed his **Petitioner's Traverse-Reply to the Respondent's Response** (*Doc. 15*) (hereinafter, "*Traverse*").  The *Traverse* repeats certain arguments in support of Segura's claims and provides additional documentation in support of his claims.

---

[12]These supplements were authorized by the Court's **Order Granting Petitioner's Motion to Supplement Pursuant to 28 U.S.C. § 2242** (*Doc. 16*) filed on December 15, 2004, and **Order Granting Petitioner's Motion to Supplement Habeas Petition Pursuant to 28 U.S.C. § 2242** (*Doc. 21*) filed on April 7, 2005.

[13]*Response* at 4-16.

[14]*Response* at 17-18.

4

**Underlying Chronology**

7.      The following chronology of Segura's federal convictions and supervised release is

provided, for the most part, by the United States in its *Response* and does not appear to be in dispute.

The Court finds that the issues raised in Segura's *Petition* can be resolved on the basis of the *Record*

without an evidentiary hearing.

8.      In July of 1987, Segura was arrested in California and charged with multiple, federal

drug offenses.  (*Response, Exhibit 1 at 8.*)  In August of 1987, he pled guilty to the offenses of

distribution of a controlled substance and possession with intent to distribute a controlled substance,

both in violation of 21 U.S.C. § 841(a)(1), in the United States District Court for the Central District

of California in Case Nos. CR-87-530-WMB and CR-87-583-WMB.  (*Memorandum in Support,*

*Exhibit A; Response, Exhibit 1 at 8-9.*)  On November 16, 1987, he was sentenced by the California

court to nine years of imprisonment to be followed by eight years of supervised release, for each

offense, with the sentences to run concurrently.[15]  (*Memorandum in Support; Response,*

*Exhibit 1 at 8.*)

9.      In 1993, Segura was released from federal custody and deported to Colombia.

(*Response, Exhibit 1 at 9.*)  He was placed on non-reporting supervised release status while outside

the United States.  (*Response, Exhibit 1 at 9.*)

---

[15]Segura was sentenced to supervised release pursuant to Section 1002 of the Anti-Drug Abuse Act of 1986 (hereinafter, "ADAA"), which took effect on October 27, 1986, and mandated terms of supervised release for individuals convicted of certain drug offenses committed after October 26, 1986. *See Pub. L. No. 99-570, 100 Stat. 3207 (1986); see also Gozlon-Peretz v. United States*, 498 U.S. 395, 404-407 (1991) (holding that Section 1002 of the ADAA took effect on October 27, 1986, the date of its enactment).

10.     In 1996, under the alias "Leon Martinez," Segura was arrested in Florida and charged with federal drug offenses. (*Response, Exhibit 1 at 1-4.*) He pled guilty to one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, in the Southern District of Florida in Case No. 96-225-CR-Ferguson(03). (*Response, Exhibit 1 at 3.*) On February 14, 1997, he was sentenced by the Florida court to a one-hundred and forty-four-month term of imprisonment to be followed by a five-year term of supervised release. (*Memorandum in Support, Exhibit C; Response, Exhibit 2.*)

11.     On June 4, 1997, in the Central District of California, Segura's supervised release imposed in Case Nos. CR-87-530-WMB and CR-87-583-WMB was revoked, as a consequence of his arrest and conviction in Florida, and Segura was committed to the BOP to serve two eighteen-month supervised release violator terms in those cases, with the terms to run concurrently with each other but consecutively to the one-hundred and forty-four-month sentence imposed in the Florida case. (*Memorandum in Support, Exhibit D; Response, Exhibit 3.*)

12.     Segura alleges in his *Petition* that, by presenting this issue to the BOP Office of Community Corrections, he exhausted all administrative remedies related to his claim that his sentences for violation of supervised release imposed in Case Nos. CR-87-530-WMB and CR-87-583-WMB should not be aggregated with his sentence imposed in Case No. 96-225-CR-Ferguson(03) because the good time credits for these sentences should be computed differently. (*Petition at 3.*) Segura's *Petition*, and its supplements, are silent on the issue of whether he exhausted administrative remedies with respect to his claim that the good time credits for his sentence in Case No. 96-225-CR-Ferguson(03) is improperly computed; however, he has submitted documents

in this proceeding,  discussed below, which indicate that he did at least assert this claim administratively.

13.    As proof of exhaustion of administrative remedies, Segura submitted copies of: (a) a letter to Segura dated June 24, 2003, from Michael Alvidrez, a Community Corrections Specialist with BOP, denying Segura's request to re-compute his two, concurrent, eighteen-month supervised release violator terms and citing, in support of the denial, the SRA, the ADAA and BOP Program Statement 5880.28;[16] (b) a CCCC Inmate Request to Staff Form, dated June 10, 2004, signed by the CCCC Records Manager, denying Segura's apparent request to re-compute his two, concurrent, eighteen-month supervised release violator terms and his good time credits and citing, in support of the denial, the ADAA and 18 U.S.C. § 3624(b);[17] (c) a CCCC Inmate Request to Staff Form, dated June 24, 2004, submitted by Segura to the CCCC Records Manager, and the Disposition dated July 9, 2004, denying Segura's request to re-compute his two, concurrent, eighteen-month supervised release violator terms and his good time credits and citing, in support of the denial, 18 U.S.C. § 3624(b) and BOP Program Statement 5880.30, page 52(6);[18] and (d) a CCCC Inmate Request to Staff Form, dated July 28, 2004, the disposition of which is unknown,[19] which was apparently submitted by

_____

[16]*See Memorandum in Support, Exhibit F (first page).*

[17]*See id. (last page).*

[18]*See id. (third page).*

[19]The record contains a copy of a memorandum dated August 3, 2004, to Segura from Enrique Ortiz, a Secure Oversight Monitor with BOP, which indicates that this request was reviewed by Ortiz and forwarded by him to CCCC's warden for review and response.  (*First Supplement, Exhibit 1.*)  Without expressly stating a position on Segura's request, this memorandum notes that BOP Program Statement 5880.28, Sentence Computation Manual, was in effect and would remain in effect until new direction was received.  (*Id.*)  The record does not indicate whether BOP or CCCC
(continued...)

Segura to Ms. Lavender[20] at CCCC, asking that his good time credits be computed based on the sentence imposed rather than the time served to date and that his sentence be re-computed to reflect this method of calculation.[21]

## Analysis

14.    Segura's *Petition*, as supplemented, is correctly filed under 28 U.S.C. § 2241. Challenges to the duration of confinement under federal law are properly brought under § 2241.  *See 28 U.S.C. § 2241(c)(3).*

15.    Allen Cooper, the warden of CCCC who was the custodian for Segura when his *Petition* was filed,[22] is the proper respondent to this action.  *See Harris v. Champion*, 51 F.3d 901, 906 (10th Cir. 1995) (stating that "[t]he law is well established that the proper respondent to a habeas action is the habeas petitioner's [current] custodian").

## Exhaustion of Administrative Remedies

16.    Although 28 U.S.C. §2241 does not contain an explicit exhaustion requirement, the law in this Circuit generally requires an inmate to exhaust BOP's administrative remedies before seeking federal habeas relief in the courts pursuant to § 2241.  *See, e.g., Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (*per curiam*) (inmate challenging BOP's computation of release date must usually exhaust BOP's administrative remedies because BOP has administrative

---

[19](...continued)
took any further action on this request.

[20]Segura alleges that Ms. Lavender was a BOP representative at CCCC at the time he submitted this request.  (*First Supplement at 1.*)

[21]*See First Supplement, Exhibit 1 (second page).*

[22]*See Response at 3.*

responsibility for computation of sentence and is in a superior position to investigate the facts);
*Holman v. Booker*, No. 98-3124, 166 F.3d 347 (Table), 1998 WL 864018 at **2-4
(10th Cir. Dec. 14, 1998) (unpublished) (inmates challenging BOP's computation of sentence must
generally exhaust BOP's administrative procedures before seeking federal habeas relief under § 2241
unless exhaustion of remedies is futile or government fails to raise the exhaustion issue).[23]

      17.      BOP has adopted an extensive, multi-step administrative procedure that allows federal
inmates to challenge any aspect of their confinement.[24]  Under this procedure, inmate claims progress
from an attempt at informal resolution to an appeal to the warden of the facility, to an appeal to the
BOP regional director and, finally, to an appeal to BOP's general counsel.[25]  In this case, the record
does not demonstrate that Segura fully exhausted these administrative remedies with respect to his
claims.[26]

---

[23]Although exhaustion of administrative remedies is generally required in § 2241 habeas
proceedings, a petitioner's failure to exhaust is not a jurisdictional defect.  *See Kosman v. Kindt*,
No. 94-6248, 39 F.3d 1192 (Table), 1994 WL 627864 at **1 n.2 (10th Cir. Nov. 9, 1994)
(unpublished) (exhaustion requirement for federal prisoners invoking 28 U.S.C. § 2241 is not
jurisdictional "[b]ecause it is not required by statute" (citations omitted)); *see also Arreola-Arreola
v. Ashcroft*, 383 F.3d 956, 965 n.10 (9th Cir. 2004) (while exhaustion of administrative remedies is
generally required in § 2241 cases "as a prudential matter," exhaustion is not a jurisdictional
requirement).

[24]*See 28 C.F.R. §§ 542.10 - 542.19 (2005).*

[25]*See id.*

[26]As noted above, the record shows that Segura submitted several letters and written requests
to the CCCC and the BOP concerning his claims, but it does not show that he pursued these claims
through all steps of BOP's multi-step administrative procedure.  While Segura alleges in his *Petition*
that he exhausted all administrative remedies with the BOP Office of Community Corrections, his
supporting documentation does not support this allegation.

18.     Neither party in this case has raised the issue of exhaustion of administrative remedies. However, the Court may raise the issue *sua sponte* in a § 2241 habeas case. *See Odum v. Boone*, 62 F.3d 327, 332 n. 2 (10th Cir. 1995) (court may raise exhaustion issue *sua sponte* in habeas proceeding); *Merritt v. United States Parol Comm'n.*, 232 F.3d 902 (Table), 2000 WL 1370432 at **1 (10th Cir. May 30, 2000) (unpublished) (court may raise issue of exhaustion *sua sponte* in § 2241 habeas proceeding).

19.     Where, as here, the government has failed to object to Segura's failure to exhaust administrative remedies and exhaustion is not jurisdictional, the Court can deem exhaustion waived and proceed to address the merits of his claims. *See Granberry v. Greer*, 481 U.S. 129, 132-136 (1987) (where government fails to raise exhaustion issue in federal habeas proceeding, and interests of justice would be served by addressing the merits of petitioner's claims, requirement may be considered waived);[27] *United States v. Woods*, 888 F.2d 653, 654 (10th Cir. 1989) (defendant's failure to exhaust administrative remedies does not preclude judicial review where the government fails to raise an objection); *Holman v. Booker*, 166 F.3d 347 (Table), 1998 WL 864018 at **4 (10th Cir. Dec. 14, 1998) (unpublished) (in habeas cases where government fails to raise exhaustion requirement, it may be considered waived).

20.     In this case, the interests of justice would be served by addressing the merits of Segura's claims.  It is unlikely that BOP would reverse its previous denials of Segura's claims at the administrative level if this case were dismissed for failure to fully exhaust administrative remedies, given the fact that his claims were denied at the administrative level based, in part, on published BOP

---

[27]*Granberry v. Greer* has been superceded by statute with respect to habeas petitions filed under 28 U.S.C. § 2254.  *See 28 U.S.C. § 2254(b)(3)* (exhaustion requirement not waived in § 2254 habeas proceeding unless State, acting through counsel, expressly waives the requirement).

10

policies.[28]   Accordingly, because Respondent has not raised exhaustion in this case, and because the

interests of justice would be better served by addressing Segura's claims on the merits rather than

insisting on exhaustion, the Court deems the exhaustion requirement waived and addresses the merits

of Segura's claims.[29]

### Aggregation of Sentences and Computation of Good Time Credits

21.      Segura contends that his two, concurrent, eighteen-month prison terms for violation

of supervised release imposed in Case Nos. CR-87-530-WMB and CR-87-583-WMB should not be

aggregated with his one-hundred and forty-four-month prison term imposed in Case No. 96-225-CR-

Ferguson(03) because the good time credits for these sentences should be computed differently.[30]

The gist of Segura's argument is that the good time credits for his two, concurrent supervised release

violator terms should be computed in accordance with the good time laws that were in effect prior

---

[28]*See Memorandum in Support, Exhibit F; First Supplement, Exhibit 1.*

[29]In this regard, the Court notes that another district court in this circuit, in a § 2241 proceeding involving the same challenge to the computation of good time credits under 18 U.S.C. § 3624(b)(1) that Segura makes in this case, has held that exhaustion would be futile and has not required exhaustion where BOP denied administrative relief based on its established policies. *See Torres v. Peterson*, No. CIV-04-935-C, 2004 WL 3354509 at *2 (W.D. Okla. May 29, 2005) (report and recommendation of Magistrate Judge that was subsequently adopted by the district court).

[30]Segura also claims that the release date for his two, concurrent supervised release violator terms should be computed by requiring that he only serve two-thirds of these terms, less accrued good time.  (*Memorandum in Support at 6-7.*)  However, he cites no authority, and the Court has found none, that would require that his supervised release violator terms be computed in this fashion. The mandatory release provisions of 18 U.S.C. § 4206(d), providing for mandatory release on parole of a prisoner after having served two-thirds of a term or terms, are not applicable to Segura's supervised release terms imposed under the ADAA which prohibits his release on parole.  *See Pub. L. No. 99-570, § 1002, 100 Stat. 3207 (1986), codified at 21 U.S.C. § 841(b).*

to November 1, 1987, the effective date of the SRA,[31] because the initial offenses to which he pled

guilty in Case Nos. CR-87-530-WMB and CR-87-583-WMB were committed prior to

November 1, 1987.  These earlier good time laws, which have been repealed,[32] were more generous

than current law in providing a system by which federal inmates could earn good time credits to be

applied against their sentences.[33]

22.     Segura contends that the length of these two eighteen-month sentences, which run

concurrently with each other but consecutively to his sentence in Case No. 96-225-CR-Ferguson(03),

will be shorter if they are re-computed in accordance with the old law and this will result in his release

from prison on an earlier date than the date projected by BOP.  (*See Petition at 3; Memorandum in*

*Support at 5-7.*)

---

[31]*See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 235, 98 Stat. 1837 (1984), as amended by Pub. L. No. 99-217, § 4, 99 Stat. 1728 (1985).*  The SRA was part of the *Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, Title II, 98 Stat. 1976 (1984).*

[32]*See 18 U.S.C. §§ 4161 - 4166 (repealed by the SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 218(a)(4), 98 Stat. 1837 (1984).*  The SRA created a new system of good time credits for federal inmates and repealed the old system of credits under 18 U.S.C. §§ 4161- 4166.  However, for five years after the effective date of the SRA, which was November 1, 1987, the old good time credit system remained in effect as to prisoners who were sentenced for offenses committed prior to the effective date.  *See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 235(b)(1)(B), 98 Stat. 1837 (1984), as amended by Pub. L. 99-217, 99 Stat. 1728, on December 26, 1985.*  The old good time credit system ended on November 1, 1992.  The new system of good time credits for federal inmates, effected by the SRA, is codified, as amended, at *18 U.S.C. § 3624(b) (2005).*

[33]Under the laws in effect prior to November 1, 1987, an eligible federal prisoner could earn general good time credits of up to eight days per month if, as in Segura's case, the length of the sentence was not less than five years and less than ten years (Segura's original sentence was nine years), and industrial good time credits of up to five days per month after the first year.  *See 18 U.S.C. § 4161-4162 (repealed).*  Whereas, under the good time credit provisions enacted by the SRA, maximum good time credits were, and still are, limited to fifty-four days per year. *See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 212(a)(2), 98 Stat. 1837 (1984)*, as amended by *Pub. L. No. 99-646, § 16(a), 100 Stat. 3592 (1986)*; *see also 18 U.S.C. § 3624(b)(1) (2005).*

23.    The United States concedes that CCCC and BOP compute Segura's sentence by aggregating his two, concurrent, eighteen-month sentences for violation of supervised release in Case Nos. CR-87-530-WMB and CR-87-583-WMB with his sentence in Case No. 96-225-CR-Ferguson(03), and that Segura's good time credits for all three of his sentences are calculated pursuant to 18 U.S.C. § 3624(b)(1) at the rate of 54 days per year, based on time served in prison; however, the United States contends that this is the correct method of computing Segura's sentence pursuant to applicable laws and BOP policy.  (*See Response at 4-16.*)

24.    The SRA was enacted in 1984.[34]  Section 218(a)(4) of the SRA repealed the good time statutes in 18 U.S.C. § 4161, *et seq.*[35]  Section 235(a)(1) of the SRA, as amended, made the repeal effective November 1, 1987, as to offenses committed after that date,[36] but Section 235(b)(1)(B) of the SRA provided that these statutes would remain in effect for five years after November 1, 1987, as to prisoners, like Segura, who committed offenses prior to November 1, 1987.[37]

25.    Although the offenses to which Segura pled guilty in Case Nos. CR-87-530-WMB and CR-87-583-WMB were committed prior to November 1, 1987, by the time his supervised release was revoked in 1997, the good time credit provisions in 18 U.S.C. § 4161, *et seq.*, applicable to inmates who committed offenses prior to November 1, 1987, were repealed and replaced by the credit

---

[34]*See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 211, et. seq., 98 Stat. 1837 (1984).*

[35]*See SRA, Pub. L. No. 98-473, Tit. II, ch. II, §218(a)(4), 98 Stat. 1837 (1984).*

[36]*See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 235(a)(1), 98 Stat. 1837 (1984), as amended by Pub. L. No. 99-217, § 4, 99 Stat. 1728 (1985).*

[37]*See SRA, Pub. L. 98-473, Tit. II, ch. II, § 235(b)(1)(B), 98 Stat. 1837 (1984).*

provisions in 18 U.S.C. § 3624(b)(1).  Thus, the only good time credit provisions in effect with respect to Segura in 1997, were the credit provisions in 18 U.S.C. § 3624(b)(1) and these are the credit provisions being applied by CCCC and BOP to compute the credits for Segura's two, concurrent, eighteen-month supervised release violator terms in Case Nos. CR-87-530-WMB and CR-87-583-WMB.[38]

---

[38]This change in the law of good time credits is reflected in BOP policy which requires that good time credits for inmates, like Segura, serving supervised release violator terms imposed pursuant to the Anti-Drug Abuse Act of 1986, for offenses that occurred on or after October 27, 1986, be computed in accordance with 18 U.S.C. § 3624(b)(1).  This policy is expressed in BOP Program Statement 5880.30, *Sentence Computation Manual ("Old Law"-Pre-CCCA-1984)* which provides, in pertinent part:

> *Supervised release (SR) terms replaced SPT's [special parole terms] for certain narcotic offenses as a result of the ADAA in 1986, effective October 27, 1986.*
>
> . . . .
>
> *(6) Remember, a prisoner who is returned to serve a sentence as the result of SR [supervised release] revocation shall not receive SGT or EGT [abbreviations for the types of good time credits that were provided for in repealed 18 U.S.C. § 4161, et seq.] and is not under the jurisdiction of the Parole Commission.*  A sentence received as a result of an SR violation may not be aggregated with any sentence that was imposed for an offense that occurred **prior** to November 1, 1987.   An SR violator term shall, of course, be aggregated with another SR violator term (provided the offense for the original sentence occurred **on or after** October 27, 1986) or with another SRA sentence (a sentence imposed for an offense that occurred **on or after** November 1, 1987).  *The prisoner does, of course, receive good conduct time under **18 U.S.C. § 3624(b)** if the imprisonment time to serve is more than one year.*

(only italicized emphasis added).  *Id. at 52, 54; see also BOP Program Statement 5880.28 (Sentence Computation Manual (CCA of 1984))* at 67 (for certain drug offenses that occurred on or after October 27, 1986 but prior to November 1, 1987, court is required to impose supervised release term even though regular sentencing provisions are under the old law).  The Court takes judicial notice of

(continued...)

14

26.     The calculation of good time credits for Segura's two, concurrent, supervised release violator terms  pursuant to 18 U.S.C. § 3624(b)(1) is consistent with the apparent intent of Congress that supervised release terms imposed pursuant to the ADAA be administered in accordance with the provisions of the SRA.  *See Gozlon-Peretz v. United States*, 498 U.S. 395, 408 (1991) (the term "supervised release" as used in Section 1002 of the ADAA has the same meaning as it does in the SRA and the draftsmen of the ADAA, enacted in 1986,  "might well have concluded that in all such cases [in which supervised release was imposed pursuant to the ADAA] the Sentencing Reform Act would be effective at the time the district court would begin to exercise its duties under the supervised release procedures").[39]

27.     Accordingly, because the good time credit provisions of 18 U.S.C. § 4161, *et seq.*, were no longer in effect by the time Segura violated his supervised release and was sentenced to two, concurrent, supervised release violator terms, and because it appears to have been the intent of Congress that supervised release violator terms imposed pursuant to Section 1002 of the ADAA be administered in accordance with the provisions of the Sentencing Reform Act, it is proper for CCCC and BOP to compute Segura's good time credits for his two, concurrent, supervised release violator terms pursuant to the provisions of 18 U.S.C. § 3624(b)(1).  Therefore, Segura's two, concurrent,

---

[38](...continued)
BOP's published program statements pursuant to *Fed. R. Evid. 201*.

[39]The SRA established a new system of post-incarceration supervised release overseen by the sentencing court but the effective date of the supervised release provisions of the SRA was delayed until November 1, 1987.  *See SRA, Pub. L. No. 98-473, Tit. II, ch. II, § 235(a)(1), 98 Stat. 1837 (1984), as amended by Pub. L. No. 99-217, § 4, 99 Stat. 1728 (1985).*  While the definition of the term "supervised release" is not set forth in the ADAA, it was set forth in the enacted, though not yet effective, SRA as early as 1984.  *See Gozlon-Peretz*, 498 U.S. at 407-408.

supervised release violator terms are properly aggregated, for administrative purposes, with his sentence in Case No. 96-225-CR-Ferguson(03).

## Computation of Good Time Credits

28.     Segura challenges the method of computing good time credits for his one-hundred and forty-four-month federal sentence in Case No. 96-225-CR-Ferguson(03).[40]  Segura contends that these credits are being computed incorrectly under 18 U.S.C. § 3624(b)(1), based on the time actually served rather than the length of the sentence imposed.[41]  Segura alleges that as a result, he will be incarcerated beyond the term of imprisonment that was imposed.

29.     Segura bases his claim on a decision announced in *White v. Scibana*, 314 F.Supp. 2d 834 (W.D. Wis. 2004).[42]  However, the district court's decision in *White* was reversed on appeal.  *See White v. Scibana*, 390 F. 3d 997, 1002-1003 (7th Cir. 2005), *cert. denied*,

---

[40]Because the good time credits for Segura's two, concurrent, eighteen-month supervised release violator terms are computed in accordance with 18 U.S.C. § 3624(b)(1), this issue is also relevant to the computation of good time credits for those prison terms.

[41]18 U.S.C. § 3624(b)(1) (2005) (footnote omitted) provides, in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

[42]Segura also relies on *Williams v. Dewalt*, 351 F. Supp. 2d 412, 413 (D.Md. 2004), in which the district court ruled that 18 U.S.C. § 3624(b)(1) is not ambiguous and that BOP's calculation of good time credits is improper; however, this decision is against the weight of authority on the calculation of good time credits pursuant to 18 U.S.C. § 3624(b)(1) and the Court finds the reasoning in *White v. Scibana*, 390 F. 3d 997 (7th Cir. 2005) more persuasive.

*White v. Hobart*, No. 04-1494, 125 S. Ct. 2921, 2005 WL 1125012, 73 U.S.L.W. 3674 (U.S. June 13, 2005).  In its decision reversing the district court, the Seventh Circuit rejected the argument presented in this case by Segura, stating that "[w]e defer to the Bureau's reasonable interpretation of the statute, which awards the credit for each year served in prison rather than each year of the sentence imposed."  *White*, 390 F.3d at 1003; *see also Yi v. Federal Bureau of Prisons*, 412 F.3d 526, 534 (4th Cir. 2005) (BOP's interpretation of credits statute based on time served is reasonable and entitled to deference); *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005) (BOP's calculation of good time credits based on time served is reasonable interpretation of ambiguous language); *Perez-Olivo v. Chavez*, 394 F.3d 45, 47 (1st Cir. 2005) (same); *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1272 (9th Cir. 2001) (same).[43]

30.   The reasoning of the Seventh Circuit in *White v. Scibana*, 390 F. 3d 997, 1003 (7th Cir. 2005) is sound and should be followed.  The use of the phrase "term of imprisonment" in the portion of 18 U.S.C. § 3624(b)(1) describing the award of good time credits is ambiguous and

---

[43]In addition to these authorities, the Sixth Circuit, in unpublished opinions by different panels, has reached the same conclusion.  *See Williams v. Lamanna*, No. 01-3198, 2001 WL 1136069 at *1 (6th Cir. Sept. 19, 2001) (unpublished) (statute clearly mandates award of good time credits based on time served); *Brown v. Hemingway*, No. 02-1948, 2002 WL 31845147 at *1 (6th Cir. Dec. 16, 2002) (unpublished) (statute is ambiguous and BOP's interpretation of statute is reasonable). Moreover, a majority of the district courts that have addressed this issue have determined that good time credits should be computed under 18 U.S.C. § 3264(b)(1) based on time served rather than the length of the sentence imposed.  *See, e.g., Pasciuti v. Drew*, No. 9: 04-CV-043, 2004 WL 1247813 at *5-6 (N.D.N.Y. June 2, 2004) (unpublished); *Young v. Ashcroft*,  No. 04-1449-KI, 2004 WL 2624724 at *2 (D. Or. Nov. 16, 2004) (unpublished); *Moore v. Bureau of Prisons*, Nos. 04 Civ. 5011 GEL, 04 Civ. 6159 GEL and 04 Civ. 6915 GEL, 2004 WL 2609589 at *1 (S.D.N.Y. Nov. 17, 2004); *Sash v. Zenk*, 344 F.Supp. 2d 376, 378  (E.D.N.Y. 2004); *Martinez v. Wendt*, No. 3:03-CV-0826-L, 2003 WL 22456808 at *3 (N.D. Tex. Oct. 24, 2003) (unpublished), *recommendation adopted in* 2003 WL 22724755 at *1 (N.D. Tex. Nov. 18, 2003) (unpublished); and *Graves v. Bledsoe*, 334 F.Supp. 2d 906, 908 (W.D. Va. 2004).  *But see Moreland v. The Federal Bureau of Prisons*, 363 F.Supp. 2d 882, 890 (S.D. Texas 2005) (phrase "term of imprisonment" in 18 U.S.C. § 3624(b)(1) means sentence imposed, not actual time served).

BOP's interpretation of this phrase as meaning "time served," as stated in its implementing regulation at 28 C.F.R. § 523.20 and in its BOP Program Statement 5880.28 at 40, is reasonable.  Therefore, Segura's good time credits should be computed, as the United States contends, under 18 U.S.C. § 3624(b)(1), based on time actually served instead of the length of sentence imposed and his claim on this ground should be denied.

### Suit on Behalf of Other Federal Inmates Incarcerated at CCCC

31.     Segura seeks an order from this Court that good time credits should be calculated pursuant to 18 U.S.C. § 3624(b)(1) based on the length of the sentenced imposed rather than the time actually served, not only for Segura but for all other federal inmates incarcerated at CCCC because "they also have suffered the same miscalculation by the BOP."  *See First Supplement at 2.*

32.     Segura has not demonstrated a basis for standing to bring this action on behalf of other inmates in a representative capacity as their next friend, such as mental incompetence, inaccessibility or other disability.  *See, e.g., Whitmore v. Arkansas*, 495 U.S. 149, 161-163 (1990) (discussing standing of inmate in habeas proceeding to sue as next friend of another inmate and noting that next friends must provide an adequate explanation as to why the real party in interest cannot appear on his own behalf such as inaccessibility, mental incompetence or other disability).

33.     Absent standing to sue as a next friend for other inmates, Segura lacks standing to bring claims on behalf of other federal inmates at CCCC in this habeas proceeding.[44]  Therefore, Segura's request for an order applicable to these other prisoners should be rejected.

---

[44]Segura has not sought certification to maintain this proceeding as a class action.  Nor has he demonstrated that it should be treated in a manner analogous to a class action.  *See Napier v. Gertrude*, 542 F.2d 825, 827 n. 2 (10th Cir. 1975) (while class actions may be technically inapplicable to habeas corpus proceedings, the court may apply an analogous procedure in proper circumstances).

18

## RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned hereby recommends that Segura's ***Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241)*** (*Doc. 1*), as supplemented, be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

_____
**Lourdes A. Martínez**
**United States Magistrate Judge**

19